## PATTERSON *v.* HALL et al.

An act mortgaging certain slaves, signed by H. and C., recited that the slaves had been previously conveyed by H. to trustees to secure the payment of a note made in favor of plaintiff, on which note partial payments had been made, since the execution of the deed, leaving a certain balance yet due; that C. had since purchased the slaves, subject to the trust; and that H. and C., intending still further to secure the payment of said balance, thereby mortgaged the slaves for the purpose of securing the same. The act declared that, if the balance so ascertained should not be paid by a certain time, plaintiff should be at liberty to seize and sell. An order of seizure and sale, taken out by plaintiff, having been enjoined by defendants, on the ground that there was no authentic evidence that defendants were indebted to plaintiff, or that the latter was the holder of the note mentioned in the mortgage, which was not filed with the petition: *Held*, that, as nothing in the notarial act, or in the petition for an injunction, or in the evidence, showed the note to have been a negotiable one, its negotiability cannot be presumed, that it can only be regarded as a mere written promise to pay a certain sum; that the notarial act, which states the exact balance and promises to pay it on a certain day, is as complete evidence of the liability to pay this balance to the plaintiff, as the note would be/if produced; and that, in the absence of any allegation or proof that the note had been assigned to a third person and notice thereof seasonably given, it was unnecessary to produce it on an application for executory process.

No anterior agreement can affect the provisions contained in an authentic act; nor can any simultaneous agreement, unless in writing, have such effect.

Though the execution of an order of seizure and sale, taken out against certain slaves, have been enjoined, the mortgagee may sequester the slaves, on showing, by his affidavit, probable cause to apprehend that defendants will remove the mortgaged property beyond his reach.

APPEAL from the District Court of the First District, *Buchanan*, J.

The defendants appealed from judgments granting an order of seizure and sale against certain property mortgaged by them to plaintiff, and from a subsequent judgment refusing to set aside a sequestration taken out by plaintiff, and dissolving an injunction obtained by defendants to stay the execution of the order of seizure and sale.

*Benjamin* and *Micou*, for tho plaintiff.   *Bartlette*, for the appellants.

The judgment of the court was pronounced by

SLIDELL, J.   The plaintiff obtained an order of seizure and sale upon exhibition of a notarial act, of which a duly certified copy was annexed to his petition.

This act, which is inartificially drawn, recites, " that, on the 13th February, 1839, the defendant *Hall* executed a certain deed of trust in favor of *Briggs & Beauchamp*, for the use and benefit of the plaintiff, by which certain slaves were conveyed to secure the payment of a certain note for $6000, drawn by the said *James Hall* and others, and made payable on the 1st of January, 1840, on which notes payments have been made reducing the balance due to the sum of $1926 47 cents, with interest thereon at the rate of eight per cent per annum, from the 7th of February, 1844, until paid.   And whereas the said negroes were afterwards conveyed by the said *James Hall* to *P. M. Collins*, of Mississippi, and by said *P. M. Collins*, on the 18th of January, 1845, to said *W. W. Collins*, the said purchaser knowing of the existence of said deed of trust, and intending to receive the negroes subject to the balance due on the same : Now, in order still further to secure the said balance, the said *J. Hall* and *W. W. Collins*, do hereby acknowledge themselves bound, jointly and severally to the said *J. W. Patterson*, his heirs and assigns, in the full sum of $1926 47 cents, besides interest from the 7th February, 1844, until paid, at the rate of eight per centum per annum.   And the said *William W. Collins* does hereby mortgage and hypothecate unto the said *Patterson*, his heirs and assigns, the slaves mentioned in said original deed of trust, and their increase, to wit :" The names of the slaves are then recited.   Then follows a pact *de non alienando*, and the act proceeds as follows :  " It being also understood and agreed that this mortgage is not intended to release the obligation of said deed of trust, but the same to remain in full force and effect, and this mortgage granted as additional security to the same ; and whereas the said *Collins* and *Hall*, are under the impression that payments have been made on said deed of trust since the said balance was struck, it is hereby agreed that said *Collins* and *Hall* are to have credit upon this mortgage for any such payments, on proof that they have been made.   And it is further agreed, that said balance of $1926 47 cents, with interest at the rate of eight per centum per annum from the 7th February, 1844, is to fall due on the 1st day of December next (1845) fixed, and without any demand or form of default ; and if the same shall not, on that day, be well and truly paid to said *Patterson*, or to his agent, *W. T. Whiting*, aforesaid, in this city, that the said *Patterson*, his heirs, or assigns, to be at full liberty to take legal measures to cause said negroes to be seized and sold to pay said debt, or any balance thereon."

The writ of seizure and sale having issued, the defendants filed a petition for an injunction, alleging that the order issued illegally, because it did not appear by the copy of the authentic act that the defendants were indebted to the plaintiff, nor was there authentic evidence that the plaintiff was the holder of the note stated in the mortgage, nor was the note filed with the petition for seizure and sale.

To these objections the plaintiff replies, that the note was novated by the agreement contained in the authentic act.   We entertain doubts whether this act constitutes a novation.   But there is another answer which might have been made successfully.   There is nothing in the authentic act, nor in the petition for an injunction, which shows the note to be a promissory note—a negotiable instrument.   Its negotiability cannot be presumed.   It stands, then, before us as a mere written promise to pay a certain sum of money.   The act recites that

the promise has been fulfilled by partial payments, states the precise balance, and promises to pay it with interest on a certain day. Certainly, the authentic act is as full and complete evidence of the liability to pay this balance to the plaintiff, as the note would be, if produced. They are both written evidence of an indebtedness. Had the note in question been declared either in the authentic act, or in the petition for an injunction, or been proven by competent evidence in the court below, to be a negotiable instrument, or even that it had been assigned to a third person and notice of assignment seasonably given, we could then recognize perhaps the necessity of its being produced and filed on the application for executory process. In the absence of any such recitation, pleading or proof, the plaintiffs in injunction, are entitled to no relief. Any future holder of this instrument could take no greater rights than the plaintiff had. Payment to him, enforced by the legal process which has issued at his suit, would be a complete bar against an assignee of the note, whether an antecedent assignee who has given no notice, or an assignee subsequent to such payment.

It is also to be observed, that *Collins* does not appear to have been a party to the note. His obligation to pay the balance due upon it is created by the notarial act, and the slaves mortgaged are represented by the act to be his property and in his possession.

It was also alleged in the petition for an injunction that payments had been made, which reduced the indebtedness to an amount less than that recited in the notarial act, and for which the order of seizure and sale issued. The court below has relieved the defendants to this extent, reducing the injunction granted as to the whole indebtedness to the amount thus paid, and dissolving the injunction, and maintaining the order of seizure and sale, as to the residue. The defendants have thus had ample justice on this score.

The plaintiffs in injunction further alleged that, the intent of the notarial agreement was, not to create a new debt, but only to create an assumption by *Collins*, and to give a mortgage to secure it; and also, that it was agreed that the note should be produced before payment was made. The first branch of this objection goes merely to the interpretation of the notarial act which must speak for itself, and authorized, in our opinion, the order of seizure and sale. The second branch of the objection presents no legal ground for relief. It is not alleged that the pretended agreement for the production of the note was posterior to the execution of the notarial act. No anterior agreement, nor simultaneous agreement, unless written, could affect the written instrument.

The injunction was properly set aside.

After an injunction was obtained, the plaintiff obtained a sequestration of the slaves, on affidavit suggesting the injunction, and declaring "that he feared that the defendants would remove the slaves out of the State, before he could have the benefit of his mortgage, and that the conduct of said parties, and the obtaining said injunction, and the short period the said parties respectively have resided in the State, induced his apprehension." The affidavit also refers to the proceedings in the cause, and alleges that the plaintiff has, upon a portion of the slaves, the privilege of vendor. The defendants contend that the affidavit was insufficient in law to sustain the order of sequestration. We consider that the allegations of the affidavit and the course pursued by the defendants, as exhibited by the record to which the affidavit refers, warranted the order of sequestration. There was probable cause to apprehend that the defendants desired to place the mortgaged property beyond the plaintiffs' reach.

*Judgment affirmed.*